UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:23-CR-13-REW-HAI |
| ) | |
| v. ) | RECOMMENDED DISPOSITION |
| ) | & ORDER |
| BRANDON FARLEY, ) | |
| ) | |
| Defendant, ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Brandon Farley has undergone two competency evaluations. Last year's evaluation resulted in a finding that he was competent to proceed. This is no longer the case.

First, Defendant was evaluated at FMC Lexington from August 4 to October 20, 2023. On November 17, Dr. Kristen McDaniel, Psy.D., provided a report finding Defendant competent. D.E. 31 (sealed reports). Dr. McDaniel diagnosed Defendant with severe alcohol use disorder but found no history of psychiatric medication or hospitalization or previous diagnosis of a mental illness. *Id.* at 5. At a hearing on November 28, the parties stipulated to the report's findings. D.E. 33. The following day, the undersigned recommended Defendant be found competent to proceed (D.E. 34), and Judge Wier adopted that recommendation on December 13, 2023 (D.E. 38).

On February 26, 2024, defense counsel filed a second motion for a pretrial competency examination. D.E. 43. According to that motion:

> Last week, the undersigned met with Mr. Farley twice because of his fast approaching trial date. In both meetings, Mr. Farley presented bizarre behavior that made the undersigned believe more time was needed for trial preparation to insure his readiness. However, the undersigned was not convinced a competency evaluation was necessitated at that time.

>However, on Friday evening (February 23, 2024), Mr. Farley's mother called the undersigned worried because she received a call from Pete Farley (Brandon Farley's father). The undersigned subsequently called Pete Farley and learned he received a jail call from Brandon's cellmate telling him to contact Brandon's attorney because Brandon was not competent to go to trial and he was not mentally stable. Therefore, the undersigned immediately contacted the jail medical staff to check on him. The next day (Saturday, February 24, 2024) the undersigned spoke with AUSA Blankenship about concerns regarding Brandon Farley's mental health and he was placed on suicide watch by the U.S. Marshals.
>
>While on suicide watch, Brandon made several phone calls to his mother and father wanting to be removed from isolation. On a call with his father, he sounded coherent and blamed the undersigned for his predicament. He then called his mother a short time later and appeared to have a complete mental breakdown. He was speaking to her as though he was eighteen years old. He did not recognize his youngest daughter's voice when she answered his call and did not recognize the name of his oldest daughter.
>
>He was asking for his grandmother to pick him up from the jail, though his grandmother died twenty years ago. Mr. Farley apologized for his tattoos to his mother even though he has had them for a while. He did not know that he was in London and thought he was in jail because he was suicidal. After that call was completed, he called his mother again and sounded completely different. . . .
>
>Presently, the Defendant appears to suffer from untreated mental diseases that directly impact his ability to think clearly, make rational decisions, or assist with the defense of his case. Based on this mental breakdown, Mr. Farley is unable to provide any assistance to the defense of his case and needs examined before this case proceeds to trial.

*Id*. The recorded jail calls were filed as a conventional exhibit. D.E. 44.

On March 1, 2024, the Court conducted a hearing on the motion. D.E. 49. Defense counsel explained she believed Defendant may not understand the nature and consequences of the proceedings and may not be able to assist properly in the defense. Defendant, she said, is again behaving delusionally and experiencing hallucinations. She described how he appeared to fluctuate between being normal and being delusional. On the date of the hearing, when counsel met with Defendant, he no longer recognized her, knew her name, or recalled anything about the

case. He told counsel he was 33 years old (he actually is 39), the year was 2016, and his children are significantly younger than they really are. When he came into the Courtroom, he told counsel that he saw his wife in the gallery, but no one was there. Defendant was visibly upset throughout the hearing. He also told the Court it was 2016, he did not know his lawyer, and he had not seen the undersigned before. He did not recall his previous competency examination. At the hearing, the government agreed that the standard for ordering a mental examination under 18 U.S.C. § 4241(a) had been met. The government had no objection to conducting a second competency examination.

On March 8, 2024, the Court ordered that Defendant be sent to FCI Fort Worth for evaluation. D.E. 53. He was there from March 14 to April 16, and returned to this District on April 23, 2024. D.E. 54, 55.

On May 15, 2024, the Court received via email the psychological evaluation ("the Report") from psychologist Lisa Bellah, Ph.D. D.E. 57. According to the Report, Defendant exhibited suicidal behavior and lethargy. He refused to shower and to eat (although he did consume nutritional supplements and ended up gaining weight). He appeared to be increasingly confused and disoriented. He began endorsing auditory and visual hallucinations, including voices telling him to harm himself. He started pacing in his cell for hours at a time. His thought content became increasingly paranoid. He claimed the year was 2016 and his description of the present was based on facts from 2016. He was given an MRI of the brain that detected no acute neurological abnormalities. *Id*.

Dr. Bella diagnosed Defendant with "Major Depressive Disorder, Recurrent episode, Severe with psychotic features." D.E. 57 at 8.[1] The diagnosis included a need to rule out "Malingering" and to rule out "Medical Etiology." *Id*. There were times that "malingering was strongly suspected." *Id*. But the Report stresses that Defendant could have been both malingering and experiencing legitimate psychiatric distress: "While it is possible that Mr. Farley was malingering or at some point exaggerating the severity of his psychiatric symptoms, prolonged daily observation suggests he also meets criteria for a mood-related disorder, with his current presentation most consistent with depression." *Id*.

The Report concludes with an opinion that

> Mr. Farley is not currently competent to proceed with resolution of his criminal case. His prognosis for potential competency restoration is considered positive, as he does not have a history of significant deterioration or mental health treatment prior to this current episode. It is suspected that his symptoms will likely improve with treatment and administration of psychotropic medication. It is recommended that the defendant be ordered to undergo an additional period of evaluation and treatment at a Federal Medical Center within the Federal Bureau of Prisons for attempted restoration of competency, under Title 18, U.S.C., Section 4241(d).

D.E. 57 at 9.

On May 23, 2024, the Court conducted an in-person final competency hearing under 18 U.S.C. §§ 4241 and 4247(d). D.E. 58. At the final hearing, the parties stipulated to the admissibility of the Report, as well as to the Report's findings. The parties also waived introduction of other proof or argument and waived the right to examine or cross-examine the evaluator. *Id*. They stipulated to Dr. Bellah's qualifications. They had no evidence or argument to contradict the findings in the Report. Defense counsel explained that the report was consistent with her observation and interactions with Defendant since his return to this District. Defense

---

[1] Page number references to the psychological evaluation are to the black letters at the bottom of the page.

counsel said she had done two video meetings with Defendant. At both meetings, Defendant spoke like he was in third grade and thought he was in third grade. Whenever counsel would bring up the charges and court proceedings, Defendant told her to talk to Mommy. Counsel said she could not effectively communicate with him. He has an "absolute disconnect from reality." Counsel believes Defendant is unable to assist with the defense and unable to understand the nature of the proceedings against him.

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960). To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402; *see also* 18 U.S.C. § 4241(a) (phrasing the test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). Section 4247(d) of 18 U.S.C. governs the competency hearing and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the hearing. *See* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d) and based on the hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of section 4241(a). This framework does not dictate which party bears the burden, which has led to disagreement among the Circuits. *See United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *11 (E.D. Tenn. Dec. 18, 2013) (compiling cases).[2]

---

[2] The Supreme Court, in dicta, has stated that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing

5

Here, the proof is not in any way disputed, and the Court need not resolve the burden allocation question. *See Medina v. California*, 505 U.S. 427, 449 (1992) (indicating that argument over burden, in competency context, only matters in "narrow class" of cases where the proof is "in equipoise").

Defendant stipulated as to both the admissibility and the substance of the Report. Accordingly, the only proof concerning Defendant's competency is the expert analysis of Dr. Bellah. The Report reflects personal observation and a review of Defendant's available medical history and status (including the previous competency evaluation from last year). Defendant was not able to participate in formal psychological testing due to his consistent placement on suicide watch. D.E. 57.

In the Report, Dr. Bellah accurately applied the *Dusky* standard as codified in 18 U.S.C. § 4241(a) to determine that Defendant is not presently competent to proceed. D.E. 57 at 9. In light of this persuasive finding and upon agreement of the parties, the Court recommends that the District Judge find, by a preponderance of the evidence, that Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense per 18 U.S.C. § 4241(d).

## **FURTHER HOSPITALIZATION PURSUANT TO 18 U.S.C. § 4241(d)**

In the current posture, hospitalization is required under § 4241(d). Indeed, having found, by a preponderance of the evidence that Defendant is not competent to proceed, § 4241(d) unequivocally states "the court **shall** commit the defendant to the custody of the Attorney

---

18 U.S.C. § 4241). However, the Sixth Circuit previously stated that "[t]he government must demonstrate by a preponderance of the evidence that defendant is competent to stand trial." *United States v. Chapple*, 47 F.3d 1170 (6th Cir. 1995) (table).

General. The Attorney General **shall** hospitalize the defendant for treatment in a suitable facility (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward[.]" 18 U.S.C. § 4241(d)(1) (emphasis added). Based upon the Court's findings herein, commitment is mandatory under § 4241(d). *See, e.g.*, *United States v. Millard-Grasshorn*, 603 F.3d 492, 494 (8th Cir. 2010); *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000); *United States v. Donofrio*, 896 F.2d 1301, 1302-03 (11th Cir. 1990); *United States v. Shawar*, 865 F.2d 856, 861 (7th Cir. 1989); *United States v. Cline*, No. 04-CR-6068L, 2008 WL 4501934, at *1 (W.D.N.Y. Sept. 30, 2008).

Accordingly, the Court **RECOMMENDS** that the District Judge find Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense per § 4241(d), and that Defendant be committed to the custody of the Attorney General for treatment at a suitable facility.

Once an appropriate facility designation is made, the Court will order that Defendant remain at the facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that he will attain the capacity to permit further proceedings to take place in the foreseeable future. 18 U.S.C. § 4241(d)(1). If at any time during Defendant's initial period of commitment, however, the director of the facility determines that Defendant has recovered his competency, the director shall file a certificate to that effect promptly with the Clerk of this Court. *See* 18 U.S.C. § 4241(e). The Court will then proceed pursuant to § 4241(e).

The Court therefore **ORDERS** as follows:

1. A copy of this Recommended Disposition shall be served on the United States Marshal, to communicate with the BOP in order to designate, as soon as practicable (and in no case more than ten days) an appropriate institution where Defendant shall receive appropriate treatment;

2. Once an appropriate facility has been designated, but not later than ten days from entry of this Recommended Disposition, the United States shall file a status report that identifies the institution designated in paragraph 1; and

3. Defendant is not to be transported at this time. First, the presiding District Judge must act upon this Recommended Disposition. Second, assuming this recommendation is adopted, this Court will enter a separate order requiring Defendant to be transported.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. As discussed at the final hearing, any objection must be filed within **FIVE DAYS** of the entry of this order. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of the objections period, this matter will be referred to Judge Wier for his consideration.

This the 23rd day of May, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge